# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MORGAN STANLEY & CO., LLC, AND MORGAN STANLEY SMITH BARNEY, LLC,** | **1:15-cv-1291-LJO-JLT** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| **v.** | |
| **DAVID COUCH,** | |
| **Defendant.** | |

## I. INTRODUCTION

Plaintiffs Morgan Stanley & Co., LLC, and Morgan Stanley Smith Barney, LLC (collectively, "MSSB," "Morgan Stanley," or "the Firm")[1] move for an order from this Court preliminarily enjoining an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") initiated by Defendant David Couch ("Couch") against MSSB on June 2, 2015. Doc. 9. MSSB contends that (1) this Court's August 7, 2015 order granting MSSB's motion for summary judgment[2] bars Couch from proceeding with the FINRA arbitration under the doctrine of res judicata and (2) Couch has waived his right to pursue his FINRA arbitration claims. *Id.* at 6-8.

The Court did not set a hearing for the motion and the parties did not request one. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS MSSB's motion and PRELIMINARILY ENJOINS Couch's FINRA arbitration from proceeding.

---

[1] Plaintiffs are two related corporate entities that the parties collectively refer to as one entity.

[2] *Couch v. Morgan Stanley*, No. 1:14-cv-10, 2015 WL 4716297 (E.D. Cal. Aug. 6, 2015), *appeal docketed*, No. 15-16749 (9th Cir. Sept. 2, 2015) ("the MSJ Order"). The Court will refer to this case as "the *Couch* case." All references to the docket in the *Couch* case will be designated as, *e.g.*, "*Couch*, Doc. 1 at 1."

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[3]

Couch joined MSSB as a full-time financial advisor ("FA") in September 2007. Doc. 1, Complaint ("Compl.") at ¶ 10. When joining, MSSB and Couch executed an employment agreement (Doc. 1-2, "Employment Agreement"), which contained the following arbitration clause:

### 7. **ARBITRATION**

7.1 Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2) or (ii) this Agreement (or its breach), will be settled by arbitration before either the National Association of Securities Dealers, Inc., ("NASD") or the New York Stock Exchange, Inc. ("NYSE") in accordance with their respective rules, and judgment upon an award issued by the arbitrator(s) may be entered in any court having jurisdiction. Except as otherwise expressly agreed, any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration. This paragraph will not be deemed a waiver of Morgan Stanley's right to injunctive or provisional relief from any court, as provided for in this Agreement.

7.2 Notwithstanding the arbitration requirement of paragraph 7.1 above, you agree that certain other claims (including, but not limited to, statutory discrimination and other statutory employment claims) must be submitted to Morgan Stanley's Alternative Dispute Resolution Program, "Convenient Access to Resolutions for Employees ('CARE'). Claims required to be submitted to CARE are recited in the CARE Guidebook.

*Id.* at ¶ 18; Employment Agreement at 5-6. Couch initialed both sections of the arbitration clause. Employment Agreement at 5-6.

In January 2014, Couch brought suit against MSSB before this Court, asserting various statutory causes of action. *Couch*, 2015 WL 4716297, at *5. On April 18, 2014, the Court granted in part and denied in part MSSB's motion to dismiss the complaint. *Id.*

On May 9, 2014, Couch filed a first amended complaint ("the FAC"), which alleged "causes of action for: (1) violation of [California Labor Code] section 1101(a); (2) violation of [California Labor Code] section 1102; (3) violation of [California Labor Code] section 98.6; (4) intentional interference

---

[3] Because this case and MSSB's motion are premised on the MSJ Order, which MSSB discusses in detail in its Complaint, *see generally* Doc. 1, the Court incorporates by reference the entire factual and procedural background of the MSJ Order. *Couch*, 2015 WL 4716297, at *1-7. To resolve MSSB's preliminary injunction motion, however, the Court need not discuss that background in detail.

2

with existing and prospective economic relationships; (5) and negligent interference with existing and prospective economic relationships." *Id.*[4]

The parties then proceeded to litigate the *Couch* case for almost a year. In doing so, Couch issued interrogatories to MSSB, deposed at least five MSSB witnesses, had numerous discovery disputes that required the Court's intervention, engaged in private mediation to resolve the case, submitted status reports to the Court, and participated in status conferences with the Court. *See generally Couch*, Docs. 31, 33, 36, 38-43, 71 at 5.

On June 2, 2015, Couch filed a claim in arbitration before a FINRA panel ("the Arbitration Claim"). *Id.* at *8; Doc. 1-4. "The Arbitration Claim's allegations are materially similar to the FAC's allegations, though they are not identical. The Claim contains four discrete non-statutory claims for relief for (1) intentional interference with existing and prospective economic relationships; (2) negligent interference with existing and prospective economic relationships; (3) breach of the covenant of good faith and fair dealing; and (4) fraud and deceit." *Couch*, 2015 WL 4716297, at *8.

On June 5, 2015, before MSSB's counsel received notice that Couch had filed the Arbitration Claim, MSSB moved for summary judgment on all of Couch's claims in the *Couch* case, and moved to enjoin Couch's FINRA arbitration. *Id.* The Court granted the summary judgment motion in its entirety, but denied MSSB's motion for an injunction on the ground MSSB was not entitled to any injunctive relief because it had no underlying claim in the *Couch* case. *Id.* at *24.

MSSB brought this case on August 21, 2015. Compl. at 1. MSSB asserts causes of action for (1) declaratory judgment and (2) injunctive relief. In the former, MSSB seeks "[a] judicial declaration that Couch is barred by res judicata and/or collateral estoppel from bringing the Arbitration Claim, and/or that Couch has waived his right to arbitrate the Arbitration Claim." *Id.* at ¶ 31. Based on those assertions, MSSB's second claim seeks an order from this Court enjoining Couch's FINRA arbitration. *Id.* at ¶¶ 34-35. MSSB maintains an injunction is necessary because Couch "has asserted claims for

---

[4] The Court refers to the fourth and fifth causes of action collectively as "the interference claims."

money damages against MSSB in the FINRA arbitration and . . . unless enjoined will continue to pursue such claims to judgment." *Id.* at ¶ 34. MSSB moved to preliminarily enjoin Couch's FINRA arbitration on September 2, 2015. Doc. 9.

On September 4, 2015, Couch filed an "Amended Statement of Claim" ("the ASC") in the FINRA arbitration. *See* Doc. 12-3. The ASC brings four claims for (1) breach of the implied covenant of good faith and fair dealing; (2) fraud and deceit; (3) negligence; and (4) breach of contract. *Id.*

Couch opposes MSSB's preliminary injunction motion on three primary grounds. First, Couch asserts MSSB fails to state a claim and therefore the Court has no jurisdiction over this case. Doc. 12 at 10. Second, Couch maintains that he did not waive his arbitration rights because the FAC asserted only "statutory employment claims expressly excluded from the arbitration provision in the Employment Agreement." *Id.* at 14. Third, Couch claims that he is authorized to proceed with the Arbitration Claim under FINRA Rule 13803. *Id.* at 18.

## III. <u>STANDARD OF DECISION</u>

To secure injunctive relief prior to a full adjudication on the merits, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit follows a "sliding scale" approach to preliminary injunctions. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131-32. For example, if the moving party is unable to establish a likelihood of success on the merits, preliminary injunctive relief may still be had if the party can show that (1) there are at least "serious questions" going to the merits; (2) the balance of the hardships tips "sharply" in its favor; and (3) the other factors listed in *Winter* (*i.e.*, irreparable harm and

in the public interest) are satisfied. *Id.* at 1135.

## IV. <u>ANALYSIS</u>

**A. Whether the Court Has Jurisdiction.**

As a threshold argument, Couch asserts MSSB's motion should be denied for lack of jurisdiction because the Complaint fails to state a claim. Doc. 12 at 13-14. Couch maintains that MSSB's "'claims' only arise as a defense to a motion to compel arbitration; but no such motion is before the Court." *Id.* at 14.

MSSB's first cause of action is for declaratory judgment. The Declaratory Judgment Act permits the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the Act "enlarged the range of remedies available in the federal courts, [it] did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

When a plaintiff seeking declaratory relief "asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or pending action determines whether federal question jurisdiction exists with regard to the declaratory judgment action." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). Accordingly, when determining declaratory judgment jurisdiction, "federal courts . . . often look to the 'character of the threatened action.'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, __ U.S. __, 134 S.Ct. 843, 848 (2014) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). "That is to say, [federal courts] ask whether 'a coercive action' brought by 'the declaratory judgment defendant . . . would necessarily present a federal question.'" *Id.* (quoting *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 19). "'If . . . the *declaratory judgment defendant* could have brought a coercive action in federal court to enforce its rights,' jurisdiction exists for declaratory relief." *Levin Metals*, 799 F.2d at 1315 (quoting *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985) (emphasis in original)).

A recent decision from the District of Arizona illustrates these principles well. *See Ameriprise*

*Fin. Servs., Inc. v. Ekweani*, No. CV-14-00935-PHX-DGC, 2015 WL 1737417, at *2-3 (D. Ariz. Apr. 16, 2015), *appeal docketed* No. 15-5866 (9th Cir. Apr. 29, 2015). That case, like this one, came before the court "in an unusual posture." *Id.* at *2. At some time in 2012, the declaratory judgment defendant, Ekweani, initiated arbitration against American Express, a corporate entity related to the plaintiff,[5] then voluntarily dismissed the action. *Id.* at *1. Then, at some time in 2013, Ekweani initiated arbitration against the plaintiff. *Id.* In response, the plaintiff filed suit in federal court, "request[ing] a declaratory judgment that arbitration is *not* required," and moved for summary judgment on the claim. *Id.* (emphasis in original).

Although Ekweani seemingly did not challenge the court's jurisdiction, the court recognized at the outset that it had to determine if it had jurisdiction over the plaintiff's sole declaratory judgment claim. *Id.* at *2. Because Ekweani had threatened the plaintiff that he would seek a court order compelling the plaintiff to arbitrate, the court found that "[t]he threatened coercive action that [the plaintiff's] declaratory judgment action anticipates is an action by [the defendant] to compel arbitration under the Federal Arbitration Act." *Id.* at *3 (citing 9 U.S.C. § 4). Thus, the question before the court was "whether an action by [the defendant] to compel arbitration would present a federal question." *Id.*

The court observed that the Federal Arbitration Act "allows a federal court to compel arbitration or stay a case for arbitration only if the underlying suit properly invokes federal jurisdiction." *Id.* (citations omitted). The court found that the underlying suit (*i.e.*, the defendant's threatened arbitration action) involved claims brought under federal law, and therefore "a motion to compel arbitration of th[o]se claims would satisfy jurisdictional requirements." *Id.* Accordingly, the court found that it had jurisdiction to rule on the plaintiff's declaratory relief claim. *Id.*

Although *Ekweani* is distinguishable from this case in that there is no indication that Couch has threatened MSSB with a motion to compel, Couch need not do so for the Court to have jurisdiction over

---

[5] The plaintiff was a subsidiary of American Express. *Ekweani*, 2015 WL 1737417, at *1.

MSSB's declaratory judgment claim. In *Janakes*, for instance, the declaratory judgment defendant did not threaten any action. In that case, the plaintiff, an employee of the United States Postal Service ("the Service"), applied for "continuation of pay" ("COP") from the Service when he was injured on the job and could not work. *Id.* at 1092. The Service granted his request, but notified the plaintiff that he would be required to reimburse the Service for the COP pay if he recovered from a third-party tortfeasor. *Id.* at 1092-93.

The plaintiff then brought a suit against the Service for declaratory and injunctive relief. The Ninth Circuit construed the action as "an assertion of a federal defense" that was "made in the face of an anticipated Service action to collect its reimbursement." *Id.* at 1093. The court held that it had jurisdiction over the plaintiff's declaratory judgment action if "the declaratory judgment defendant [*i.e.*, the Service] *could have brought* a coercive action in federal court to enforce its rights." *Id.* at 1093 (emphasis in original). The court found that "a hypothetical suit could be brought by the Service and therefore, [the plaintiff's] declaratory relief action would be supported by jurisdiction." *Id.* at 1094. Accordingly, the court had jurisdiction to rule on the plaintiff's declaratory judgment action. *Id.* at 1095.[6]

Here, as in *Ekweani*, the potential coercive action Couch could bring that would provide this Court with jurisdiction is a motion under 9 U.S.C. § 4 to compel MSSB's participation in the FINRA arbitration. As the court observed in *Ekweani*, "[t]he Federal Arbitration Act is not itself a source of federal-question jurisdiction." 2015 WL 1737417, at *3 (citation omitted). Rather, the [Federal] Arbitration Act allows a federal court to compel arbitration or stay a case for arbitration only if the underlying suit properly invokes federal jurisdiction." *Id.* (citing 9 U.S.C. §§ 3-4; *Vaden v. Discovery Bank*, 566 U.S. 49, 59 (2009)). In other words, the Court "should assume the absence of the [arbitration]

---

[6] The Ninth Circuit has followed *Janakes*'s jurisdictional logic consistently. *See, e.g.*, *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1253 (9th Cir. 1987); *Levin Metals*, 799 F.2d at 1315; *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("In other words, in a sense we can reposition the parties in a declaratory relief action by asking whether we would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy.").

7

agreement [between the parties] and determine whether it 'would have jurisdiction under title 28 [of the United States Code]' over 'the controversy between the parties.'" *Vaden*, 556 U.S. at 50.

The Court indisputably would have diversity jurisdiction over Couch's arbitration claims if he had brought them in this Court—the parties are completely diverse and Couch seeks approximately $2,000,000 in damages. *See* 28 U.S.C. § 1332. "[A] motion to compel arbitration of these claims would satisfy jurisdictional requirements." *Ekweani*, 2015 WL 1737417, at *3. The Court therefore finds that it has jurisdiction over MSSB's declaratory judgment claim.[7]

**B. MSSB's Motion Preliminarily to Enjoin the FINRA Arbitration.**

**1. Success on the Merits.**

MSSB asserts that it is likely to succeed on the merits of its declaratory relief claim that Couch has waived his rights under the Arbitration Clause. Doc. 9 at 6, 8. To evaluate this assertion, the Court must determine (1) whether this Court, as opposed to a FINRA arbitrator, decides whether Couch has waived his right to pursue the FINRA arbitration; (2) if so, whether Couch actually did waive his rights to the FINRA arbitration; and (3) if so, whether the Court is empowered to enjoin the FINRA arbitration because of Couch's waiver.[8]

**a. The Court Decides Whether Couch's Arbitration Claim Is Arbitrable.**

The Court must determine at the outset whether it, as opposed to a FINRA arbitrator, decides the validity of the Arbitration Clause. That is, the Court must determine who decides whether Couch waived his right to enforce the Arbitration Clause because if the Court does not do so, then the Court lacks jurisdiction to rule on MSSB's motion.

Courts generally decide whether an arbitration agreement is valid. *See Cox v. Ocean View*, 533 F.3d 1114, 1119-20 (9th Cir. 2008). This includes determining whether an arbitration agreement is

---

[7] Accordingly, the Court need not determine whether it has jurisdiction over MSSB's second claim for injunctive relief, as that claim is not necessary for the disposition of MSSB's motion for a preliminary injunction.

[8] For the reasons discussed below, the Court finds that Couch waived his arbitration rights. Accordingly, the Court need not decide whether Couch's FINRA arbitration is barred by the *Couch* case under res judicata or collateral estoppel principles.

unenforceable by one party because that party has waived its rights under the agreement. *See id.*; *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("[W]e join the First and Third Circuits in holding that the court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement") (citations omitted).

But, as the Ninth Circuit recently explained:

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted). But, unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is "'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis added) (alteration omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986)). In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability.

*Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013). Therefore, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago*, 514 U.S. at 944.

The threshold issue presented by MSSB's motion is who decides whether Couch waived his arbitration rights under the Arbitration Clause—the Court or a FINRA arbitrator? As far as the Court can determine, with the exception of the Eighth Circuit, every court to have considered the issue has held explicitly that it is presumptively for the courts, not arbitrators, to decide issues of waiver.[9] The Court cannot find—and the parties do not provide—Ninth Circuit authority that provides a clear, explicit

---

[9] *See, e.g.*, *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. App'x 462, 464 (5th Cir. 2004) ("[W]aiver in this case depends on the conduct of the parties before the district court, and the court, not the arbitrator, is in the best position to decide whether the conduct amounts to a waiver under applicable law"); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) ("The proper presumption in this case is that the waiver issue is for the court and not the arbitrator."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 218 (3d Cir. 2007); *Chronimed*, 529 F.3d at 393; *Grigsby & Assocs., Inc. v. M. Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) ("Today we conclude that it is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate."); *see also Hong v. CJ CGV Am. Holdings, Inc.*, 222 Cal. App. 4th 240, 256-58 (2013) (collecting state and federal cases holding courts presumptively decide issue of waiver of arbitration rights); *contra Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003).

9

answer to the question. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*, 828 F. Supp. 2d 1150, 1165 (C.D. Cal. 2011) ("*In re Toyota*"), *aff'd sub nom. Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) (observing that the Ninth Circuit's *Ocean View* decision is consistent with the majority of federal courts that hold courts presumptively decide arbitrability). But the Ninth Circuit has indicated that defenses to the enforceability of an arbitration agreement, such as waiver, are for the Court to decide. *See Ocean View*, 533 F.3d at 1120 ("[O]ur case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself," such as waiver); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000-01 (9th Cir. 2010). Accordingly, the Court finds that it is presumptively for the Court, not a FINRA arbitrator, to decide whether Couch waived his arbitration rights.

Nonetheless, in certain circumstances, "clear and unmistakable evidence" demonstrating an intent for the arbitrator to determine arbitrability may arise from incorporation of certain arbitral forum rules. In *Oracle America*, for instance, the parties' arbitration agreement provided that any arbitration dispute pursuant to the agreement would be decided "in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL)." 723 F.3d at 1071. The "central dispute" in the case was "whether incorporation of the UNCITRAL rules into the parties' arbitration provision constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." *Id.* at 1073. The Ninth Circuit, joining the Second Circuit and the D.C. Circuit, concluded there was "no reason to deviate from the prevailing view that incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability," *i.e.*, the arbitrator would decide which claims were subject to arbitration. *Id.* at 1073-75 (discussing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir.2011) and *Republic of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012)).

The Ninth Circuit observed that "[t]he 1976 UNCITRAL arbitration rules provide that '[t]he

arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement' . . . . The 2010 UNCITRAL rules state that '[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement.'" *Id.* at 1073 (citations omitted). The Ninth Circuit concluded that, "[b]y giving the arbitral tribunal the authority to decide its own jurisdiction, both the 1976 and 2010 UNCITRAL rules vest the arbitrator with the apparent authority to decide questions of arbitrability." *Id.*

In addition, the court noted that, analogously, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1073 (citations omitted). The court observed that "[t]he AAA rules contain a jurisdictional provision similar to Article 21(1) of the 1976 UNCITRAL rules and almost identical to Article 23(1) of the 2010 UNCITRAL rules." *Id.* (footnote omitted). "Commercial Arbitration Rule 7(a) provides that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* at 1074 n.1.

The Arbitration Clause in this case provides:

> Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2), or (ii) this Agreement (or its breach), *will be settled by arbitration before either the National Association of Securities Dealers, Inc.* ("NASD[10]") or the New York Stock Exchange . . . in accordance with their respective rules . . . . Except as otherwise expressly agreed, *any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration.*

(Emphasis added.) Couch has not pointed to any analogous FINRA arbitration rule, and the Court cannot locate one. *Cf. Sykes v. Escueta*, No. 10-3858 SC, 2010 WL 4942608, at *2 (N.D. Cal. Nov. 29, 2010) (holding that "because neither party contends that FINRA rules clearly state that FINRA should

---

[10] The Court takes judicial notice of the fact that FINRA is the successor to NASD. *See* United States Securities & Exchange Commission, NASD Rulemaking, https://www.sec.gov/rules/sro/nasd.shtml ("As of July 30, 2007, NASD is now known as Financial Industry Regulatory Authority (FINRA) and new rule proposals will be listed under FINRA.").

determine the arbitrability of this dispute, the question of FINRA's jurisdiction over [the plaintiff] is within the purview of this Court"). Accordingly, the incorporation of the FINRA rules into the Arbitration Clause does not provide clear and unmistakable evidence that the parties intended to submit the issue of arbitrability to arbitration.[11]

Clear and unmistakable evidence to delegate issues of arbitrability to the arbitrator also can arise from direct delegation language. However, cases finding an arbitration clause provided clear and unmistakable evidence of delegating issues to an arbitrator concerned much more thorough and specific arbitration clauses than the one at issue in this case. For instance, in *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, No. CV 14-6289 PSG (VBKx), 2014 WL 10100283, at *4 (C.D. Cal. Nov. 26, 2014), the court concluded the following arbitration clause "clearly and unmistakably indicate[d] an agreement to submit [certain] threshold issues of substantive arbitrability to an arbitrator": "the Arbitrator shall have exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable."

Similarly, in *Anderson v. Pitney Bowes, Inc.*, No. C 04-4804 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005), the court found the following arbitration clause "'clearly and unmistakably' provide[d] an arbitrator with the exclusive authority to determine whether the [arbitration provision was] enforceable": "the Arbitrator shall have *exclusive authority* to resolve any dispute relating to the *interpretation, applicability, or enforceability or formation* of this Agreement, including . . . any claim that all or any part of this Agreement is *void or voidable*." (Emphasis in original). The court concluded that "[t]he parties unambiguously expressed their intent to submit the question of unconscionability to an arbitrator by giving him or her the exclusive power to decide the [arbitration clause's] formation, enforceability, applicability and whether all or any part of it is void or voidable." *Id.*

In *Momot v. Mastro*, 652 F.3d 982, 983 (9th Cir. 2011), the district court (1) found the parties'

---

[11] Because Plaintiff did not bring an arbitration claim before the New York Stock Exchange, the Court need not examine its arbitration rules.

arbitration agreement provided that the court, not an arbitrator, should determine threshold issues of

arbitrability and (2) permanently enjoined the parties' AAA arbitration. The provision at issue in *Momot*

read in relevant part:

> (a) *Arbitration*. If a dispute arises out of or relates to this Agreement, the relationships that result
> from this Agreement, the breach of this Agreement *or the validity or application of any of the
> provisions of this Section 4*, and, if the dispute cannot be settled through negotiation, the dispute
> shall be resolved exclusively by binding arbitration.

*Id.* at 988 (emphasis in original). The Ninth Circuit held that "this language, delegating to the arbitrators

the authority to determine 'the validity or application of any of the provisions of' the arbitration clause,

constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Id.*

(quoting *Rent-A-Center*, 130 S.Ct. at 2777). The Ninth Circuit thus concluded that the "the parties

clearly and unmistakably agreed to arbitration the question of arbitrability." *Id.*

The Court finds that, in this case, the Arbitration Clause's language—"[e]xcept as otherwise

expressly agreed, any dispute as to the arbitrability of a particular issue or claim pursuant to this

arbitration provision is to be resolved in arbitration"— does not provide *clear and unmistakable*

evidence that the parties intended to submit to arbitration the issue of whether Couch waived his

arbitration rights. The Arbitration Clause is far more ambiguous that the arbitration provisions at issue in

*Hill*, *Anderson*, and *Momot*; it can be interpreted reasonably to mean that an arbitrator should determine

the scope of the agreement, that is, which causes of action properly are brought in arbitration. If the

parties intended to submit to arbitration the issue of whether the Arbitration Clause is enforceable, they

presumably would have included more explicit language akin to the language in the arbitration

provisions at issue in *Hill*, *Anderson*, or *Momot*. Accordingly, the Court concludes that it, not a FINRA

arbitrator, decides whether Couch waived his arbitration rights.

### b. Couch Waived His Arbitration Rights.

#### (1) Waiver Standards.

A written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But the "right to arbitration, like any other contract right, can be waived." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). "[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (citations omitted). Accordingly, "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

"Unless the arbitration agreement specifies that state law controls the rules for arbitration, the issue of waiver is decided under federal law." *Texas Nrgize No. 1, Inc. v. Kahala Franchise Corp.*, No. 15-cv-337-PHX-DGC, 2015 WL 3707979, at *2 (D. Ariz. June 15, 2015) (citing *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002)). "[P]arties must clearly evidence their intent to be bound by [state] rules. In other words, the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak*, 280 F.3d at 1269 (citations omitted).

The Arbitration Clause makes no mention of whether state or federal law will control the rules for arbitration, although the Employment Agreement does provides that it "will be governed by and construed in accordance with the laws of the state in which" Couch signed it (California). *See* Employment Agreement at § 9. But "general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators." *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998).

Accordingly, federal law governs the issue of whether Couch waived his right to arbitrate.[12] *See*

---

[12] Regardless, a California Court of Appeal recently observed there is "no meaningful difference between waiver principles under the FAA or California law as they apply to agreements to arbitrate." *Bower v. Inter-Con Sec. Sys., Inc.*, 232 Cal. App. 4th 1035, 1041-42 (2014); *see also Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 444 (2012) (finding that "under the Federal Arbitration Act and the California Arbitration Act . . . courts apply the same standards in determining waiver claims") (citation omitted). The Ninth Circuit has held, however, that the three-factor test used in the Ninth Circuit "is not based on California law." *Cox v. Ocean View*, 533 F.3d 1114, 1124 n.7 (9th Cir. 2008). But even if the Court were to apply the six-factor test for waiver under California law as articulated by the California Supreme Court in *St. Agnes Med. Ctr.*

14

*Sovak*, 280 F.3d at 1270 ("We further conclude that waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls."); *Kahala Franchise Corp.*, 2015 WL 3707979, at *2 (applying Ninth Circuit law on waiver because the "general choice of law provision" in the parties' contract "does not override the strong presumption that federal law controls").   "In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts." *Fisher*, 791 F.2d at 694. All three conditions are satisfied in this case.

### (2) Analysis.

#### i. Knowledge of Right to Arbitrate.

Couch does not dispute that he had knowledge of his right to arbitrate statutory employment claims under the Arbitration Clause. In any event, the first *Fisher* prong is satisfied because Couch cannot dispute that he signed the Employment Agreement and twice initialed the Arbitration Clause provisions, and therefore knew of his arbitration rights. *See Hoffman Const. Co. of Or. v. Active Erectors and Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (finding that a party knew of its right to arbitrate because "[t]he contract itself called for arbitration of disputes").

#### ii. Inconsistency.

In theory, Couch could have acted consistently with his right under the Arbitration Clause to arbitrate his non-statutory claims by submitting them to arbitration after extensively litigating *only* statutory claims in this Court. But that is *not* what happened—the FAC asserted the tortious interference claims.

Couch argues these claims are statutory employment claims because they were premised on

---

*v. PacifiCare of Cal.*, 31 Cal.4th 1187, 1196 (2003), the Court's conclusion below that Plaintiff waived his rights would be the same. All of the *St. Agnes* factors, except the fourth—whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings—are satisfied here.

MSSB's alleged violation of various provisions of the California Labor Code and California Business & Professions Code §§ 16600 ("§ 16600") and 17200 ("§ 17200"). Doc. 12 at 12. In support of this interpretation, Couch points to FINRA Rule 13100(y), which defines a "statutory employment discrimination claim" as "a claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute." *Id.* at 16.

Couch's assertion that the interference claims constitute "statutory employment claims" is unavailing.[13] Although the claims are premised on MSSB's allege violation of various California statutes, the claims are indisputably tort-based. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 381 (1995). The torts are rooted in California case law, not California statutes. *See Korea Supply*, 11 Cal.4th at 1153 ("We first articulated the elements of the tort of intentional interference with prospective economic advantage in *Buckaloo v. Johnson*, (1975) 14 Cal.3d 815, 827"). Simply put, the Court is unaware of any authority that suggests a tort claim should be considered a statutory claim because it is premised on conduct that allegedly violates a statute.

In the Court's view, the term "statutory employment claim" in the Arbitration Clause is a claim that is premised *exclusively* on a statutorily conferred right. That is, a "statutory employment claim" is a statutory cause of action that could not exist in the absence of the applicable statute because the source of the claim is the statute—and the statute only.[14]

---

[13] Likewise, Couch's arguments that he has an "absolute right" as a matter of law to arbitrate his claims under FINRA Rule 13803 and that MSSB failed to comply with the Rule have no merit. Doc. 12 at 7, 18. Under FINRA Rule 13803(a)(1)(A), MSSB had the *option* to compel Couch to bring the claims in his Arbitration Claim before this Court in the *Couch* case so that all of the claims could be decided in one forum. If MSSB did so, the Court would have had the discretion to accept Couch's arbitration claims. *Id.* And under FINRA Rule 13803(a)(2)(A), if Couch initiated an arbitration claim against MSSB *and then* asserted related statutory discrimination claims in this Court, he would have had the option to assert his arbitration claim in this Court. In short, Couch incorrectly interprets Rule 13803.

[14] *See Hoover v. Am. Income Life Ins. Co.*, 206 Cal. App. 4th 1193, 1208 (2012) (holding that "the rights accorded by [Labor Code] sections 203, 1194, and 2802 may not be subject to negotiation or waiver . . . . For an arbitration clause to operate for individual statutory claims, there must be a clear and unmistakable waiver of a judicial forum."); *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1290 (2007) (discussing cases that "involved unwaivable statutory claims for federally mandated overtime and minimum wage payments"); *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1077 (2003) (describing certain "statutory rights" as "unwaivable statutory claims" that cannot be arbitrated); *Armendariz v. Found.*

16

The Supreme Court of Texas addressed—and rejected—an interpretive argument similar to Couch's in *In re NEXT Financial Group, Inc.*, 271 S.W.3d 263 (Tex. 2008).[15] In that case, the plaintiff, a broker registered with the National Association of Securities Dealers ("NASD"), sued his former employer, a securities brokerage firm, for allegedly firing him "for refusing to conceal a trader's fraudulent 'churning' transactions." *Id.* The plaintiff brought a so-called "*Sabine Pilot*" Texas common law claim, which permits "an at-will employee [to] recover damages from an employer who terminated his employment solely for refusing to perform an illegal act." *Id.* at 265-66 (citing *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734-35 (Tex. 1985)). His employer argued the claim had to be arbitrated under the parties' agreement, which provided that any dispute between the parties would be decided under "the rules, constitutions, or bylaws of [the NASD]." *Id.* at 265-66.

Rule 13201 of the NASD Code of Arbitration Procedure ("Rule 13201"), in turn, provided that any "claim alleging employment discrimination . . . in violation of a statute" was excepted from arbitration. *Id.* at 266. The plaintiff conceded that the Rule did not except common law claims, such as his *Sabine Pilot* claim, but argued that claim was "inherently different because [his employer's] act of terminating him for refusing to commit a criminal act constitutes a violation of the Texas Penal Code." *Id.* at 269. Thus, the plaintiff argued that his "*Sabine Pilot* wrongful termination action is a 'claim alleging employment discrimination' and such discrimination was 'in violation of a statute,'" which rendered it excepted from arbitration under Rule 13201. *Id.*

The Texas Supreme Court rejected the plaintiff's "strained interpretation" of the "plain meaning

---

*Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 101 (2000) ("[I]t is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the [Fair Employment and Housing Act, Cal. Gov. Code §§ 12900 et seq.] . . . . [P]arties agreeing to arbitrate statutory claims must be deemed to consent to abide by the substantive and remedial provisions of the statute. Otherwise, a party would not be able to fully vindicate [his or her] statutory cause of action in the arbitral forum" (citations and quotation marks omitted)); *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1084 ("'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute'" (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985)); *see also Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1051, 1062 (11th Cir. 1998) ("Federal statutory claims are generally arbitrable . . . [unless] an arbitration clause has provisions that defeat the remedial purpose of the statute" (citations omitted)).

[15] Because the Arbitration Clause is governed by California law under the Employment Agreement, the Court looks to this case only as persuasive authority, particularly given its especially analogous facts. *See Sovak*, 280 F.3d at 1270 (choice-of-law clause in contract provides state substantive and decisional law).

17

and intention of the NASD Code." *Id.* The court held that "[t]he most natural reading of this rule is that it applies only to violations of statutes proscribing employment discrimination," reasoning that a *Sabine Pilot* claim "is not a *statutory* discrimination claim, nor is it converted into one merely because the underlying conduct might actually constitute a violation of some other type of statute." *Id.* at 270 (emphasis added).

The same is true of Couch's tortious interference claims brought under California common law. Although they are premised on MSSB's conduct that allegedly violated various California statutes, this does not convert them into statutory claims. The "most natural reading" of the Arbitration Clause's language exempting "statutory" claims from arbitration is that it applies to wholly statutory claims.

As such, filing the FAC—with two non-statutory tort claims—was Couch's first act inconsistent with his right to arbitrate non-statutory claims under the Arbitration Clause. Approximately a month later, Couch and MSSB submitted a joint scheduling report. *Couch*, Doc. 26. In that 20-page report, the parties thoroughly outlined their respective positions and understandings of the facts and legal issues present in the case. *See id.* The parties also submitted a thorough discovery plan. *Id.* at 16-19. Couch demanded a jury trial and MSSB demanded a bench trial. *Id.* at 17. Based on the parties' scheduling report, the Court set a number of deadlines. *See Couch*, Doc. 28.

The parties then engaged in extensive discovery for almost a year. Between May 9, 2014, when the FAC was filed, and June 2, 2015, when Couch submitted his Arbitration Claim, the parties made numerous Court appearances, had numerous discovery disputes that required the Court's intervention, engaged in private mediation to resolve the case, submitted status reports to the Court, and participated in status conferences with the Court. *See generally Couch*, Docs. 31, 33, 36, 38-43. MSSB's counsel prepared and submitted a motion for summary judgment that it filed before it received notice of the Arbitration Claim. *See Couch*, 2015 WL 4716297, at *8.

Even assuming that the ASC's claims are styled as different causes of action with materially different facts than the FAC's causes of action, as Couch maintains, is aside the point—Couch's nearly

year-long litigation conduct in this case in support of the FAC's non-statutory interference claims was entirely inconsistent with his right to arbitrate those claims under the Arbitration Clause. Courts routinely have found that a party's actively litigating a lawsuit for a substantial period of time before demanding arbitration is indisputably inconsistent with the right to arbitrate. *See Van Ness*, 862 F.3d at 758 (holding that party waived its arbitration rights by actively litigating case for two years); *see also Ford v. Yasuda*, No. 5:13-cv-1961-PSG-DTB, 2015 WL 3650216, at *6 (collecting cases finding months-long delay in demanding arbitration is inconsistent with right to arbitrate).

Couch's litigation conduct in the *Couch* case thus supports a finding that he acted inconsistently with his right to arbitration long ago—and continued to do so for a substantial period of time. *See Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x 663, 663-64 (9th Cir. 2014) (party waived arbitration rights by "wait[ing] eleven months after the lawsuit was filed to demand arbitration, actively litigating the case in district court"); *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1086 (S.D. Cal. 2013) (finding a party's "active participation in this lawsuit, through the summary judgment stage, was sufficiently extensive and substantial as to be inconsistent with an existing right to arbitrate"). Couch's conduct in the *Couch* case strongly suggests he "had made a conscious decision to exploit the benefits of pretrial discovery and motion practice, with relation to the arbitrable claims, that were fully available . . . only in the judicial forum." *Nat'l Found for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 776 (D.C. Cir. 1987). Accordingly, the Court finds the second prong of *Fisher* is satisfied here.

### iii. Prejudice.[16]

The Court finds that MSSB will be prejudiced if the Court does not find that Couch waived his right to arbitration. For approximately one year, MSSB committed significant resources to litigating the *Couch* case before this Court without any indication from Couch that he intended to submit claims to

---

[16] Couch provides no compelling argument concerning prejudice. Couch simply asserts MSSB will suffer no harm if the FINRA arbitration proceeds because the Firm will be able to assert the defenses it now asserts (*i.e.*, waiver, res judicata/collateral estoppel). Doc. 12 at 7, 20.

19

arbitration. That delay alone can constitute prejudice. *See, e.g.*, *Steiner v. Horizon Moving Sys., Inc.*, No. EDCV 08-682-VAP (CTx), 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008) ("Plaintiff's delay constitutes prejudice."); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 847 (N.D. Cal. 2012) ("Where courts have found prejudice from delay, the parties had engaged in extensive discovery."). Because Couch made no indication that he intended to invoke his right to arbitrate any claims until over a year after filing the FAC,[17] MSSB would be prejudiced by being required "to bear the expense of educating arbitrators" and, because Couch asserts the same interference claims the Court has decided in MSSB's favor in the Arbitration Claim, the parties would have to "relitigate matters decided by [this Court]," which would "waste the time and money spent by [MSSB] in federal court." *Kelly*, 552 Fed. App'x at 664. Couch's 13-month delay in invoking his arbitration rights and costs MSSB incurred in litigating the *Couch* case support a finding of prejudice. *See Kahala Franchise Corp.*, 2015 WL 3707979, at *3 ("These costs and the loss of ten months in resolving this dispute satisfy the prejudice requirement of waiver.") (collecting cases); *Lyzwa v. Chu*, No. C-97-20053, 1998 WL 326768, at *4 (N.D. Cal. Feb. 2, 1998) (finding prejudice to the party opposing a motion to compel arbitration was "apparent" due to the "considerable time and money" it had expended litigating the case in federal court); *In re Toyota*, 828 F. Supp. 2d at 1165 (defendant prejudiced by plaintiff's delayed invocation of arbitration rights because defendant had "expended substantial resources, time, and effort in litigating th[e] action and [had been] committed to a litigation strategy in federal court").

But MSSB will suffer prejudice for another reason if the Court permits Couch's Arbitration Claim to proceed. FINRA Rule 13510 states, in part, that "[d]epositions are strongly discouraged in arbitration," and are permitted "only under [five] very limited circumstances," none of which would appear to be present in Plaintiff's FINRA arbitration. In the *Couch* case, however, Couch deposed a number of MSSB employees. *See Couch*, 2015 WL 4716297, at *1-2. Similarly, FINRA Rule 13506(a)

---

[17] Although Couch indicated in February 2015 that he intended to submit claims to FINRA arbitration, *see Couch*, Doc. 51-3, he did not do so until June 2015. In any event, Couch's litigation conduct in this case through February 2015 was inconsistent with his arbitration rights.

provides that "[s]tandard interrogatories are generally not permitted in arbitration." Rather, parties in FINRA arbitration may make "requests for information," which "are generally limited to identification of individuals, entities, and time periods related to the dispute." FINRA Rule 13506(a). In the *Couch* case, however, Couch issued, and MSSB responded to, numerous interrogatories. *See Couch*, Doc. 71 at 5; *Couch*, Doc. 72, Declaration of Deborah Klar, at ¶ 7. Couch's conducting depositions and propounding interrogatories to MSSB in the *Couch* case also supports a finding of prejudice. *See St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th 1187, 1203 (2003) (prejudice may be found where the petitioning party used discovery process to gain information that could not have been gained in arbitration); *In re Toyota*, 828 F. Supp. 2d at 1165 (finding prejudice because defendant had "benefited from discovery—such as from the deposition of Plaintiff Nash—that it would not have been entitled to in arbitration").

The Court therefore finds that MSSB would be prejudiced by permitting Couch's FINRA arbitration to proceed. Accordingly, MSSB has satisfied all three *Fisher* prongs. Couch has waived his rights under the Arbitration Clause and is not entitled to pursue the Arbitration Claim. *See Ocean View*, 533 F.3d at 1120.

### c. Whether the Court Can Preliminarily Enjoin the FINRA Arbitration.

MSSB does not provide—and the Court cannot find—any clear authority from the Ninth Circuit explicitly holding that this Court is empowered to enjoin private arbitration on the ground a defendant, who is pursuing the arbitration, has waived its right to do so. *But see Morgan Stanley & Co., Inc. v. Seghers*, No. 10-cv-5378 (DLC), 2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010) (granting motion to enjoin FINRA arbitration on ground the defendant waived arbitration rights by litigating claims in federal court). Albeit not due to a party's waiver, a number of district courts within this Circuit have enjoined arbitration seemingly without any challenge or question as to whether federal courts have the authority to do so. *See, e.g.*, *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759 (N.D. Cal. 2008); *Wachovia Securities, LLC v. Raifman*, No. C 10-4573 SBA, 2010 WL 4502360 (N.D. Cal. Nov. 1,

2010); *Sykes v. Escueta*, No. 10-3858 SC, 2010 WL 4942608 (N.D. Cal. Nov. 29, 2010); *AT&T Mobility LLC v. Bernardi*, No. C 11-3002 CRB, C 11-4412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011); *Pension Plan for Pension Trust Fund for Operating Engineers v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034 (N.D. Cal. Jan. 28, 2013); *Ingram Micro, Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC (ANx), 2014 WL 3721197 (C.D. Cal. July 22, 2014).

Cases in federal court concerning the enforceability of an arbitration agreement generally arise in the context of a party's motion to compel arbitration. *See, e.g.*, *Richards v. Ernst & Young, LLP*, 744 F.3d 1072 (9th Cir. 2013); *Ford*, 2015 WL 3650216, at *6 (collecting cases). This may be due to the fact that the FAA explicitly empowers federal district courts to compel a party to participate in arbitration, *see* 9 U.S.C. § 3, but does not explicitly empower the courts to enjoin private arbitration. In any event, the Ninth Circuit has indicated that when a party initiates arbitration against a party that opposes it, the opposing party may immediately bring a motion to enjoin the arbitration. The opposing party need not wait until the initiating party moves in federal court to compel the opposing party's participation in the arbitration.

In *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 735 (9th Cir. 2014), the City of Reno initiated FINRA arbitration "to resolve its claims against Goldman arising out of their contractual relationship. Goldman then filed [an] action to enjoin the FINRA arbitration." The Ninth Circuit did not indicate that it was improper for Goldman to immediately move to enjoin the FINRA arbitration and, in fact, reversed and remanded the district court's denial of that motion for further consideration of the remaining preliminary injunction factors that the district court did not reach. *See id.* at 736, 747; *see also id.* at 748 (Battaglia, J., sitting by designation, dissenting in part) ("I would affirm the district court's denial of Goldman's motion to preliminarily enjoin the FINRA arbitration").

Given that federal courts sometimes must determine whether a party has a right to arbitration (*e.g.*, in the context of a motion to compel arbitration), it follows that the federal judiciary may enjoin arbitration if necessary to enforce its orders. A majority of federal appellate courts to address the issue

have held explicitly federal district courts have that authority.[18] A federal court order denying a motion to compel—that is, an order finding that a party does not have the right to demand that the opposing party participate in arbitration—effectively would be unenforceable if the court could not enjoin arbitration proceedings that proceed in direct defiance of the order.

As the Second Circuit recently explained, district courts are "not powerless to prevent one party from foisting upon the other an arbitration process to which the first party had no contractual right." *In re American Exp.*, 672 F.3d at 141. "It makes little sense . . . to conclude that district courts lack the authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement." *Id.* Similarly, it would make little sense to empower the federal judiciary with the authority to deny a motion to compel arbitration (*i.e.*, find that a party has no right to arbitrate certain claims) while stripping the federal courts of the ability to enjoin arbitration that nonetheless proceeds in direct violation of its orders. *See In re American Exp.*, 672 F.3d at 141; *Societe General*, 672 F.3d at 868; *In re Y & A*, 38 F.3d at 382-83 ("No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations").[19]

In sum, the Court concludes it has the authority to enjoin arbitration proceedings where there is no valid, enforceable arbitration agreement between the parties. Here, there is no such agreement *for Couch* to enforce because he waived his rights under the Arbitration Clause. *See Textile Unlimited, Inc.*

---

[18] *See, e.g., In re American Exp. Fin. Advisors Securities Litig.*, 672 F.3d 113, 139-142 (2d Cir. 2011) ("*In re American Exp.*"); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *overruled on other grounds by Howsam*, 537 U.S. at 85; *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt & Sys. Co.*, 643 F.2d 863, 867-68 (1st Cir. 1981); *In re Y&G Grp. Sec. Litig.*, 38 F.3d 380, 382-83 (8th Cir. 1994); *but see Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1108 (11th Cir. 2004) (holding that under *Howsam*, arbitrators presumptively decide "procedural questions of arbitrability," which include defenses to arbitrability).

[19] In *Taylor v. Southwestern Bell Tel. Co.*, the Eight Circuit appears to indicate that *In re Y&A*'s holdings were limited to the facts at issue in that case. *See* 251 F.3d 735, 742 (8th Cir. 2001) ("*In re Y & A* is not controlling, however; it did not involve a labor dispute and it grew out of a prior consent judgment."). Further, the court in *Taylor* cited the Eleventh Circuit's decision in *Klay* for the proposition that the FAA "generally requires that affirmative defenses, such as res judicata, be decided by the arbitrator, rather than by the courts." *Id.* And, as noted above, the Eighth Circuit explicitly held that the Supreme Court's decision in *Howsam* mandates the presumption that arbitrators, not the courts, decide issues of waiver. *See Transamerica*, 328 F.3d at 466. Thus, whether *In re Y&A*'s holdings remain good law in the Eighth Circuit is questionable.

23

*v. A..BMH & Co., Inc.*, 240 F.3d 781 (2001). *See Ocean View*, 533 F.3d at 1120 n.2 ("Other courts have considered waiver as a defense to a motion to compel arbitration." (collecting cases)). Accordingly, he has no right to pursue his Arbitration Claim against MSSB. The Court therefore finds that MSSB has satisfied its burden of showing it is likely to succeed on the merits of its declaratory judgment claim.

**2. Irreparable Harm.**

MSSB contends it will suffer "substantial and immediate irreparable injury" if the Court does not grant its motion. Doc. 9 at 14; Doc. 15 at 4. MSSB claims it will have to proceed in the FINRA proceedings in the absence of an injunction, and doing so "may cement FINRA's jurisdiction over MSSB for purposes of arbitration Couch's claims." *Id.* As noted, Couch's only argument that MSSB will not suffer harm if the arbitration proceeds is that MSSB will be able to assert its affirmative defenses in that forum.

"Injunctive relief is only available when legal remedies are 'inadequate.'" *Picayune Rancharia of Chukchansi Indians v. Tan*, No. 1:14-cv-220-AWI-SAB, 2014 WL 763170, at *4 (E.D. Cal. Feb. 24, 2014) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "Typically, monetary harm does not constitute irreparable harm." *Calif. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated on other grounds sub nom. Douglas v. Independent Living Ctr. of So. Calif., Inc.*, 132 S.Ct. 1204 (2012). "[E]conomic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*." *Id.* (emphasis in original). Accordingly, because "[m]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation," *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984), a "plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 595 (1952).

Yet, "[s]everal [courts] have held that a party is irreparably harmed by incurring costs arbitrating a dispute that the court has concluded is non-arbitrable." *Pension Plan*, 920 F. Supp. 2d at 1049

(collecting cases). Courts are split, however, on the issue of whether being subjected to incur the expense associated with an otherwise non-arbitrable dispute constitutes "irreparable injury" in and of itself, or whether the party opposing the arbitration must demonstrate that it will suffer unrecoverable economic damages.[20] Although the Ninth Circuit apparently has not addressed the issue explicitly, it has indicated that irreparable injury presumptively would exist if a party is required to expend resources participating in an arbitration in which it has no duty to participate. *See LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (1988) ("*Consolidators*") ("Finally, Local 63 contends that declaratory and injunctive relief were inappropriate in this case because Consolidators did not show that further arbitration would have caused irreparable harm or that there was no adequate remedy at law. Consolidators was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate.").

Nonetheless, most, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable harm.[21] These cases are distinguishable in that MSSB does not dispute that Couch's Arbitration Claim asserts only Couch's non-statutory claims that the parties

---

[20] *Compare Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("Although an injury that is adequately compensated by a monetary award is not considered 'irreparable,' here the time and resources Maryland would expend in arbitration is not compensable") *with PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (holding party "would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction, if even just for a determination of the scope of that jurisdiction" (footnote omitted)), *overruled on other grounds, Howam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002); *McLaughlin Gormley King co. v. Terminix Intern. Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award"); *Invitrogen Corp. v. Employers Ins. Co. of Wausau*, No. 06-232-PHX-MHM, 2006 WL 381666, at *1 (D. Ariz. Feb. 16, 2006) ("Plaintiffs have set forth persuasive authority suggesting that the costs and fees associated with an unnecessary arbitration as well as the potential cost of setting aside any unfavorable arbitration result rises to the level of irreparable harm" (citing *McLaughlin*, 105 F.3d at 1193, and *PaineWebber*, 921 F.2d at 514)).

[21] *See, e.g., Maryland Cas. Co.*, 107 F.3d at 979; *Berthel Fisher & Co. Fin. Servs., Inc. v. Frandino*, No. CV 12-2165-PHX-NVW, 2013 WL 2036655, at *8 (D. Ariz. May 14, 2013) ("Plaintiff will suffer irreparable harm if the arbitration to which it did not consent proceeds"); *CIG Asset Mgmt. v. Bircoll*, No. 13-cv-13213, 2013 WL 4084763, at *2 (E.D. Mich. Aug. 13, 2013) ("Courts have found that the harm suffered by a party who is forced to arbitrate claims that it did not agree to arbitrate is per se irreparable." (collecting cases)); *Ingram Micro, Inc. v. Signeo, Int'l, Ltd.*, No. SACV 13-1932-DOC (ANx), 2014 WL 3721197, at *4 (C.D. Cal. July 22, 2014) ("Forcing a party to submit to arbitration, when it did not agree to do so, constitutes per se irreparable harm."); *see also Multibank 2010-1 SFR Venture, LLC v. Saunders*, No. 2:11-cv-1245 JCM (CWH), 2011 WL 5546960, at *2 (D. Nev. Nov. 14, 2011) (party would suffer irreparable harm if forced to participate in arbitration that is prohibited by federal law)

agreed to arbitrate. But at least two district judges have found that a party will suffer irreparable harm if it is forced to participate in a FINRA arbitration initiated by a party that has waived its right to do so. *Citigroup Global Markets, Inc. v. Municipal Elec. Auth. of Georgia*, No. 14 Civ. 2903 (AKH), 2014 WL 3858509, at *2-3 (S.D.N.Y. June 18, 2014) ("Since Citigroup likely has no obligation to arbitrate its dispute [before FINRA], it would be irreparably harmed by having to spend its resources on the arbitration." (citations omitted)); *Seghers*, 2010 WL 3952851, at *6 (finding that arbitration expenditures "are an irreparable injury sufficient to support a preliminary injunction"). This makes sense given the underlying (and obvious) principle that a party should not be required to arbitrate disputes where the party initiating the arbitration has no right to do so. *See AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1752 (2011) ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations.").

 "[A]t least one district court in this circuit has found . . . that not staying a FINRA arbitration would likely cause a plaintiff irreparable harm because it would leave it with 'no adequate remedy at law to recover the monetary and human capital it would expend defending itself in arbitration.'" *Sykes*, 2010 WL 4942608, at *4 (citing *Roven*, 548 F. Supp. 2d 759 at 766). And in *Sykes*, the court found the plaintiff would suffer irreparable harm if the defendants' FINRA arbitration was not enjoined because of the plaintiff's lack of a legal remedy to recover costs incurred in that arbitration and the "high likelihood FINRA lack[ed] jurisdiction over [him]." *Id.*; *see also Textile Unlimited*, 240 F.3d at 786 (affirming district court's finding that party would be irreparably harmed by incurring unrecoverable arbitration costs).

Because the Court has found Couch waived his arbitration rights, MSSB is under no duty to participate in the FINRA arbitration. MSSB therefore will suffer irreparable harm if forced to participate in the arbitration.

**3. Balance of the Equities and the Public Interest.**[22]

An injunction is favored when the harm to the plaintiff if the injunction is denied outweighs any harm to the defendants if the injunction is granted. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 2014). MSSB asserts Couch will not be harmed by any preliminary injunction, and notes that he will still be able to pursue his appeal of the Court's order granting summary judgment for MSSB in the *Couch* case. Doc. 9 at 14. Couch provides no argument as to why the equities balance in his favor.

As it stands, Couch has waived his right to pursue the FINRA arbitration. If the Court does not issue a preliminary injunction against those proceedings, MSSB will be required to expend time and resources litigating claims Couch has no right to pursue, and possibly may be required to return to the Court to set aside an arbitration award. The Court therefore finds that the balance of equities favors MSSB. *See Consolidators*, 849 F.2d at 1241 n.3 (holding the plaintiff "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate"); *OppenheimerFunds Distrib., Inc. v. Liska*, No. 11-cv-1586 BEN (WMc), 2011 WL 5984036, at *5 (S.D. Cal. Nov. 28, 2011) (finding equities balanced in favor of the plaintiff opposing FINRA arbitration because the defendant's claims were not subject to arbitration and any arbitration award to the defendant "may ultimately be set aside by the Court"). For the same reason, the Court finds that a preliminary injunction against Couch's FINRA arbitration is in the public interest. *See Sykes*, 2010 WL 4942608, at *5 ("[T]he public interest is not served by compelling parties to arbitrate claims when there is no [enforceable] arbitration agreement between the parties."); *Frandino*, 2013 WL 2036655, at *8 ("Allowing an arbitration to proceed without an agreement to arbitrate does not serve the public interest."); *Ingram Micro*, 2014 WL 3721197, at *5 (same).

Finally, permitting the FINRA arbitration to proceed raises the risk of duplicative litigation with

---

[22] Couch does not discuss these factors in his opposition.

contradictory results. Although the ASC's claims are styled as different causes of action with seemingly different theories of liability than those in the FAC (and resolved by the MSJ Order), at their core, they assert largely the same material facts as the FAC and constitute another chance for Couch to attempt to prove MSSB's conduct was unlawful.

The Court thus finds that MSSB has satisfied its burden of establishing all four *Winter* factors and is entitled to a preliminary injunction against Couch's FINRA arbitration proceedings.

### V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court GRANTS MSSB's motion for a preliminary injunction of Couch's FINRA arbitration proceedings. Couch is RESTRAINED AND ENJOINED from pursuing his claims against MSSB in FINRA arbitration until the Court resolves this case.

IT IS SO ORDERED.

Dated:   __September 24, 2015__          ____**/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE