UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN STANLEY & CO., LLC, AND MORGAN STANLEY SMITH BARNEY, LLC,<br><br>Plaintiffs-Counter-Defendants,<br><br>v.<br><br>DAVID COUCH,<br><br>Defendant-Counter-Complainant. | 1:15-cv-1291-LJO-JLT<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' MOTION FOR SANCTIONS (Doc. 42) AND MOTION TO DISMISS (Doc. 43) |

## I. INTRODUCTION

In July 2016, the Ninth Circuit affirmed this Court's decision in *Couch v. Morgan Stanley & Co., LLC* ("*Couch v. MSSB*"), 1:14-cv-10-LJO-JLT, a case related to this one, granting summary judgment to Morgan Stanley & Co., LLC, and Morgan Stanley Smith Barney, LLC (collectively, "Morgan Stanley"), on all of David Couch's claims. *See Couch v. Morgan Stanley*, __ Fed. App'x __ 2016 WL 3924392 (9th Cir. July 21, 2016) ("the MSJ Decision"). In August 2016, the Ninth Circuit affirmed this Court's preliminary injunction against Couch pursuing any claims in arbitration before a panel of Financial Industry Regulatory Authority ("FINRA") arbitrators on the ground that Couch had waived his arbitration rights. *See* Docs. 36, 37; *Morgan Stanley & Co., LLC v. Couch*, __ Fed. App'x __, 2016 WL 4245527 (9th Cir. Aug. 11, 2016) ("the PI Decision").

In response to the Ninth Circuit's PI Decision, the Court ordered party Couch to show cause why he should not now be permanently enjoined from pursuing any FINRA arbitration claims against MSSB. Doc. 38. Along with his timely response to that directive (Doc. 40), Couch filed an answer to Morgan

Stanley's complaint and asserted counterclaims[1] for negligent and intentional misrepresentation. Doc. 39.

Morgan Stanley now moves (1) for a permanent injunction against Couch pursuing any FINRA arbitration claims and (2) to dismiss Couch's counterclaims under Federal Rule of Civil Procedure[2] 12(b)(6) as barred by the MSJ Decision under the doctrine of res judicata. *See* Doc. 42-1.[3] For the following reasons, the Court GRANTS both motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Because the parties are familiar with the facts of this case and those of *Couch v. MSSB*, the Court incorporates them by reference and provides only a brief recitation of them here. *See Couch v. Morgan Stanley & Co., Inc.*, No. 1:14-cv-10-LJO-JLT, 2015 WL 4716297, at *1-5 (E.D. Cal. Aug. 7, 2015) ("the MSJ Order"), and *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1219-21 (E.D. Cal. 2015) ("the PI Order").

Couch was a full-time Financial Advisor ("FA") for MSSB from September 2007 until his termination in January 2013. MSJ Order at *1. Prior to joining MSSB, Plaintiff requested approval from MSSB to continue to serve on the Bakersfield City Council while at MSSB and to run for and serve on the Kern County ("the County") Board of Supervisors ("the Board"), if elected. *Id.* at *2. In the fall of 2011, Plaintiff began campaigning for the Board position. *Id.* at *3. MSSB directed Plaintiff to file an "Outside Business Interests" ("OBI") form, which MSSB requires before approving its employees' requests to pursue certain positions outside of the work, including the Board position. *See id.* Plaintiff complied. *Id.* The OBI he submitted stated, among other things, that the Board position was full-time,

---

[1] Couch mistakenly labeled his countercomplaint and counterclaims as a "cross-complaint" and "cross-claims," respectively.

[2] All further references to any "Rule" are to the Federal Rules of Civil Procedure.

[3] If the Court denies Morgan Stanley's motion for a permanent injunction, Morgan Stanley also moves (1) for Rule 16(f) sanctions; (2) for an order reinstating the Court's *sua sponte* vacated order on Couch's motion to dismiss (Doc. 29); and (3) to strike Couch's answer. Doc. 51 at 11. The Court DENIES these requests as moot because the Court grants Morgan Stanley's motion for a permanent injunction.

requiring approximately 35 hours of work per week. *Id.*

After receiving the OBI—which MSSB never approved—MSSB required Couch to submit a "No Conflicts Letter" from the County, confirming that there would be no conflicts of interest if Couch were elected to the Board and remained a FA. *Id.* Couch never obtained one. *Id.*

In July 2012, Couch was elected to the Board, and was scheduled to assume the position in January 2013. *Id.* at *4. During the fall of 2012, various MSSB employees discussed their concerns about Couch's ability to work simultaneously as a full-time FA and full-time Board Supervisor, which, in their view, raised practical and legal concerns. *Id.* Specifically, MSSB was concerned that it would be impossible for Couch to perform both jobs satisfactorily and, even if he could, doing so would potentially violate the rules of state and federal regulatory agencies, including the Securities and Exchange Commission's "Pay-to-Play" rule. *See id.* at 3, 5. In December, MSSB determined that Couch could not hold both positions and informed him that he would have to choose one or the other. *Id.* at 5. Couch seemingly agreed and told an MSSB employee that he would stay at MSSB and not take the Board position. *Id.* at *5. But in January 2013, Couch was sworn in as a Board Supervisor and refused to resign from the position. *Id.* MSSB informed him that if he would not do so immediately, he would be terminated from MSSB. *Id.* Couch again refused, so MSSB terminated him. *Id.*

Couch then brought *Couch v. MSSB*, asserting various statutory violations. *See id.* After the Court granted MSSB's motion to dismiss with leave to amend, Couch filed a first amended complaint ("FAC"), asserting various statutory violations, as well as tortious interference claims. Shortly after MSSB submitted its answer to the FAC, the Court issued a scheduling order in June 2014, which set August 25, 2014 as the deadline for "any requested pleading amendments . . . either through a stipulation or motion to amend." Doc. 28 at 3. The deadline passed without Couch attempting to amend the FAC, and the parties continued discovery.

On June 2, 2015, Couch filed a claim in arbitration before FINRA ("the Arbitration Claim"). MSJ Order at *8. Couch purported to have had the right to do so pursuant to his "Employment

Agreement" with MSSB. *See* PI Order at 1219-20. The Arbitration Claim contained non-statutory claims for (1) intentional and negligent interference with existing and prospective economic relationships; (2) breach of the covenant of good faith and fair dealing; and (3) fraud and deceit. *See Couch v. MSSB*, Doc. 52-1, Arbitration Claim ("Arb. Claim"), at 14-20. The basis for the fraud and deceit claim is Couch's contention that prior to joining MSSB, Rachel Fanucchi, who was his supervisor at MSSB, fraudulently misrepresented to Couch that, should he join MSSB, he would be permitted to run for and serve as a Board Supervisor. *See id.* at ¶¶ 71-76. The basis for the remaining claims is that, prior to joining MSSB, MSSB knowingly and intentionally failed to timely inform Couch that he would not be allowed to serve as a Board Supervisor, which prevented him from timely resigning and, in turn, prevented him from joining a new firm and transferring his clients. *Id.* at ¶¶ 45, 47, 57, 69.

Three days after Couch filed the Arbitration Claim, MSSB moved for summary judgment on all of his claims in *Couch v. MSSB*. MSJ Order at *8. The Court granted the motion in its entirety and the Ninth Circuit affirmed. MSJ Decision at *1.

Immediately after the Court issued the MSJ Order, MSSB filed this declaratory judgment case, seeking to enjoin Couch's FINRA arbitration. *See* Doc. 1. MSSB moved to enjoin Couch preliminarily and argued that he had waived his right to arbitration by litigating *Couch v. MSSB*. *See* PI Order at 1219. The Court agreed and issued a preliminary injunction against Couch's FINRA arbitration. *See id.* Shortly after, MSSB moved for summary judgment, and requested that the Court make the injunction permanent on the ground that the only issue was whether Couch had waived his arbitration rights and there were no disputed issues of material fact as to that issue. Doc. 30 at 1. Couch appealed the PI Order, which divested the Court of jurisdiction over MSSB's motion for summary judgment. The Ninth Circuit, however, affirmed the PI Order in its entirety. *See* PI Decision at *1.

After the Ninth Circuit's mandate entered, the Court ordered Couch to show cause why the Court should not now permanently enjoin him from pursuing FINRA arbitration against MSSB. Doc. 38. Couch timely complied, and also filed an answer and counter-complaint with counterclaims for

4

negligent and intentional misrepresentation. Docs. 39, 40. The basis of those counterclaims is that MSSB negligently and intentionally misrepresented to Couch while hiring him that, if he were to join MSSB, he would still be able to run for and serve as a County Supervisor. *See* Doc. 39, Counter-complaint, at ¶¶ 48, 54. Couch claims that he did not known of the facts underlying the claims until MSSB filed its motion for summary judgment in *Couch v. MSSB* that he learned, via the declaration of Jennifer Blake filed in support of the motion, that MSSB would not approve his OBI to serve as a Board Supervisor due to MSSB's concerns about the Pay-to-Play regulation and the position's being full-time. *Id.* at ¶¶ 44, 48, 54. Couch asserts that "while employed by Morgan Stanley, [he] was informed . . . that approval of [his] OBI was conditioned on the execution of a No-Conflict letter by Kern County." *Id.* at ¶ 45. In sum, Couch's counterclaims allege:

> At no time prior to the filing of the Blake Declaration, either before or after the Couch termination, did anyone at Morgan Stanley ever advise Couch or his attorneys that based on the disclosures in the Couch OBI, information provided to Morgan Stanley in February 2012, based on Morgan Stanley's interpretation of its modified procedures discussed in the Blake Declaration, adopted by Morgan Stanley in 2011 in response SEC Pay to Play regulations, the Supervisor position would "require resignation" <u>because of "more substantial time commitments."</u>

*Id.* at ¶ 44 (emphasis added); *see also* Doc. 47 at 11 (Couch arguing that "until the MSJ, no one at MSSB ever advised Couch or his counsel that . . . the Supervisor position would require resignation because of more substantial time commitments"). Couch therefore claims that "Morgan Stanley knew or should have known by no later than March 1, 2012 that it would not approve the Couch OBI," but negligently and intentionally represented otherwise to Couch. *Id.* at ¶¶ 48, 54. Because of MSSB's alleged misrepresentations, Couch "was induced to remain and did remain at Morgan Stanely and did not timely resign . . . so he could [] serve as a Kern County Supervisor," *id.* at ¶ 50, which prevented him from transferring his clients when he left MSSB. *Id.* at ¶¶ 40, 50, 56.

      MSSB now moves (1) to convert the Court's preliminary injunction into a permanent one and (2) to dismiss Couch's counterclaims under Rule 12(b)(6) as barred by res judicata under the MSJ Decision. Couch opposes both motions. *See* Docs. 40, 46, 47. The Court took the matters under submission on the

5

papers pursuant to Local Rule 230(g). Doc. 83.

## III. STANDARDS OF DECISION

**A.     Permanent Injunction**

To obtain a permanent injunction, the movant must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). The standard is therefore essentially the same as for a preliminary injunction except that the movant must show actual irreparable injury, not the likelihood of it. *See Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

**B.     Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

### A.     Permanent injunction

The Court discussed its findings and analysis on the preliminary injunction standards in extensive detail in the PI Order. *See* PI Order at 1227-37. The Ninth Circuit affirmed in all respects. PI Decision at 1. As noted, the only difference between the standards for a preliminary injunction and a permanent injunction concerns the first factor—the harm the movant has suffered. *See Amoco*, 480 U.S. at 546 n.12. Despite multiple filings, Couch has provided no persuasive reason why the Court's analysis in the PI Order on the other factors should not apply with equal force here. For the reasons stated in the PI Order, the Court again finds MSSB has satisfied the second, third, and fourth injunction factors.

Consequently, the only factor the Court need assess to convert the preliminary injunction into a permanent injunction is whether MSSB has demonstrated actual (as opposed to likely) injury. *See id.* To make that determination, the only issue the Court must consider is whether Couch's pursuing arbitration

despite waiving his right to do so is a sufficient injury to permanently enjoin him from attempting to arbitrate any claims against MSSB pursuant to his Employment Agreement.

Couch raises a number of arguments why the Court cannot permanently enjoin him, but the Court need not address them. The only relevant determination in the PI Order was the Court's conclusion that Couch had waived his arbitration rights years ago by pursuing the claims he chose to litigate in *Couch v. MSSB*. Nothing material has changed since the Court issued the PI Order that would affect that determination. And nothing material will change because Couch has forever waived his arbitration rights—a fact Couch fails to acknowledge.

For the reasons more thoroughly outlined in the PI Order, the Court concludes that Couch's attempt to arbitrate claims in FINRA arbitration that he waived the right to bring injured MSSB such that the Court should now permanently enjoin him from attempting to do so again. *See* PI Order, 134 F. Supp. 3d at 1234-36. "One of the threads running through federal arbitration jurisprudence is the notion that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." PI Decision at *3 (quoting *Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (citations and quotation marks omitted)). MSSB was therefore "entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate." *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988); *Thelen Reid Brown Raysman & Steiner LLP v. Marland*, 2009 WL 725077 (9th Cir. 2009) (affirming permanent injunction of arbitration proceedings not covered by parties' arbitration agreement); *see also Hoffman Constr. Co. of Ore. v. Active Erectors & Installers, Inc.*, 969 F.2d 796 (9th Cir. 1992) (affirming permanent injunction of arbitration claim that was waived and barred by res judicata). Accordingly, the Court PERMANENTLY ENJOINS AND RESTRAINS Couch from pursuing his FINRA Arbitration Claim and any claims in arbitration against MSSB arising from his Employment Agreement.

**B.    Couch's Counterclaims are barred by res judicata**

MSSB moves to dismiss with prejudice Couch's counterclaims as barred by the MSJ Order (and the Ninth Circuit's affirmance of it) under the doctrine of res judicata. As a threshold matter, the parties dispute whether federal or California principles of res judicata apply. The Supreme Court has unequivocally held that "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (applying federal common law to determine preclusive effect of federal-court judgment) (citing *Sturgell*, 553 U.S. at 891). Accordingly, the Court applies federal res judicata principles to determine the preclusive effect of the MSJ Order.

Res judicata bars "any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (citation and quotation marks omitted). "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* (citation and quotation marks omitted).

Because Couch does not and cannot dispute the second and third elements are met here, the only disputed issue is whether there is an identity between Couch's counterclaims and his claims resolved in the MSJ Order. To determine whether an identity of claims exists, the Court considers the following factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right, and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917-18 (9th Cir. 2012) (citation and quotation marks omitted). "The last of these criteria is the most important." *Id.* at 918. Accordingly, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (citation and quotation marks omitted); *see also Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987-98 (9th Cir. 2005) (finding identity of

claims existed based only on finding that two cases arose out of the same transactional nucleus of facts). "[W]here claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island*, 673 F.3d at 918. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Int'l Union of Operating Engineers–Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993).

The basis for Couch's counterclaims is his assertion that MSSB: (1) misrepresented to him prior to joining MSSB that he would be permitted to serve simultaneously as a Board Supervisor and FA; (2) concluded in early 2012 that he would not be permitted to do so; and (3) knowingly or negligently failed to inform him of that conclusion in a timely manner, (4) so he was unable to resign in a timely manner, which caused him damages. *See* Counterclaims at ¶¶ 44-45. MSSB asserts these claims are barred by res judicata because Couch could have brought them in *Couch v. MSSB*, but failed to do so. Doc. 43-1 at 7-8. Couch asserts he was unable to bring them because he was unaware of their factual foundation—MSSB's conclusion that he could not hold both positions due to concerns about time commitments[4]—until MSSB filed the Blake Declaration in support of its motion for summary judgment in *Couch v. MSSB* in June 2015.[5]

To determine whether the Court's MSJ Order has res judicata effect here, the Court may take

---

[4] Although Couch references MSSB's pay-to-play concerns, the Court understands his counterclaims to assert that he was unaware until MSSB's motion for summary judgment in *Couch v. MSSB* of MSSB's terminating him due to its conclusion that he could not hold both a Board and FA position because both were full-time jobs. *See* Counterclaims at ¶ 44 ("At no time prior to the filing of the Blake Declaration . . . did anyone at Morgan Stanley ever advise Couch or his attorneys that . . . the Supervisor position would 'require resignation' <u>because of 'more substantial time commitments'</u>" (emphasis added)); Doc. 47 at 11 ("[U]ntil the MSJ, no one at MSSB ever advised Couch or his counsel that . . . the Supervisor position would require resignation <u>because of more substantial time commitments</u>" (emphasis added)).

[5] Couch's opposition to MSSB's motion to dismiss, which contains numerous arguments, is difficult to understand at times. Among other things, Couch fails to address the correct legal standard, instead relying on California legal principles of res judicata, which makes his opposition even less clear. The Court has endeavored to understand Couch's positions and construe them in light of the applicable law in an effort to avoid putting form over substance. Nonetheless, the Court has thoroughly considered Couch's many arguments and finds none persuasive. The Court therefore focuses only on the arguments and evidence necessary to rule on MSSB's motion to dismiss.

judicial notice of filings in *Couch v. MSSB* whose authenticity and information is not subject to reasonable dispute. *See* Fed. R. Evid. 201(c), (d); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record beyond the pleadings on a motion to dismiss). Although the Court may judicially notice documents in the record from that case, the Court cannot and does not assume the truth of the matters they contain, *see Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), but may review them to determine what issues were actually litigated or could have been litigated. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice "of several other pleadings, memoranda, expert reports, etc." from related litigation); *Callan v. New York Community Bank*, 643 Fed. App'x 666, 666 (9th Cir. 2016) (approving district court's taking judicial notice of documents from prior state court case sua sponte when finding that federal court claims were barred by state court judgment under doctrine of res judicata because they could have been brought in state court).[6]

Couch essentially argues he was unable to bring his counterclaims because he was unaware until MSSB's June 2015 motion for summary judgment that MSSB terminated him because it concluded he was unable to be a full-time Board Supervisor and a full-time FA simultaneously. This contention strains credulity and borders on an outright misrepresentation to the Court by Couch's attorney, Deborah A. Klar. Couch deposed MSSB employees in early 2015 in the *Couch v. MSSB* litigation, who testified that MSSB had concluded Couch would either have to choose to be a FA or a Supervisor because, in MSSB's view, he could not do both full-time jobs simultaneously.

For instance, Michael Struckman testified on January 9, 2015:

> I agreed with the review [of the decision to terminate Couch] that was done that we would not permit Mr. Couch to hold a second full-time position while employed as a financial advisor at Morgan Stanley [because] [t]he primary responsibility is to manage clients' wealth . . . . My responsibility is to make sure that they are getting the best possible service, and that can't be done if the advisor has another full-time job . . . . We

---

[6] The Court notes that Couch does not dispute this conclusion. In fact, Couch does not oppose MSSB's request for judicial notice of documents filed in *Couch v. MSSB*, *see* Docs. 43-4, 50-1, and also asks the Court to take judicial notice of three documents filed the case. *See* Doc. 48.

don't permit advisors to hold second full-time positions.

*Couch v. MSSB*, Doc. 48-4 at 23:25-26:14. Rob Hampton testified on February 20, 2015:

> The decision [to terminate Couch] was reviewed by the business, myself for HR, and risk . . . . The issues that were laid out were the commitment, the time commitment of Mr. Couch's elected position, being in conflict with his ability to provide his full-time efforts to support the business and the financial obligations that he had to his clients, his responsibility to their well-being. The concerns were laid out that if Mr. Couch was not able to be a full-time or provide his full-time efforts as a financial advisor but continued to receive compensation from the firm, that there could be "pay to play" concerns that would put the firm at risk. There were concerns regarding our ability to maintain or the feasibility of maintaining his license if he was not able to provide his full-time efforts as a financial advisor for his clients . . . . It became clear that Mr. Couch's new responsibilities would be in conflict with his ability to serve as a financial advisor giving his full-time efforts to his clients . . . . If Mr. Couch performs 35 hours a week of work for Kern County, that means that he cannot by definition be a full-time employee of Morgan Stanley. If Morgan Stanley is paying him as a full-time employee, his compensation based on the book of business that he has left here and he's not performing services to earn that because he's not in our offices contacting clients, having conversations and performing his fiduciary responsibility, then we're essentially paying him to do something else.

*Couch v. MSSB*, Doc. 48-7 at 37:10-38:35, 98:14-17, 133:5-15. Given this testimony, it is difficult to conceive how Couch and his attorney, Deborah A. Klar, can credibly claim that neither of them knew until MSSB filed its motion for summary judgment that MSSB terminated Couch due, in part, to concerns about the time commitment required for the Board position.

        Nonetheless, the Court assumes the truth of the facts alleged in Couch's counterclaims for purposes of MSSB's motion to dismiss. Even assuming their truth, the Court finds that the counterclaims are barred by res judicata because they arise out of the same transactional nucleus of facts underlying Couch's claims in *Couch v. MSSB*. All of the claims concern the same factual circumstance—Couch's termination, the events leading up to it, the reasons for it, and who was involved in the decision. The claims also concern whether and to what extent MSSB assured Couch before and during his employment that he could run for and serve on the Board while remaining a FA, and how MSSB did so (or failed to do so). Critically, Couch's claims in arbitration—filed before MSSB's motion

for summary judgment—rely on allegations that are materially similar to those underlying the counterclaims. As with the counterclaims, his arbitration claims are predicated on Couch's assertion that MSSB (1) negligently and intentionally misrepresented to Couch that he would be permitted to serve as both a Supervisor and FA; and (2) MSSB negligently and intentionally failed to inform him in a timely manner that MSSB had concluded otherwise, which (3) prevented him from timely finding another firm and transferring his clients, which caused him monetary damages. Simply put, those claims and his counterclaims "are related to the same set of facts," and there is no indication that they could not have been "conveniently . . . tried together." *Turtle Island*, 673 F.3d at 918.

Because the counterclaims arise from the same transactional nucleus of facts involved in *Couch v. MSSB*, Couch could have brought them in that case. As a result, they are barred by res judicata. *See id.* ("[W]here claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding."). Accordingly, the Court GRANTS MSSB's motion to dismiss without leave to amend.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS MSSB's motion for a permanent injunction and motion to dismiss. The Court ORDERS that:

**1.** Couch is PERMANENTLY ENJOINED AND RESTRAINED from pursuing any claims against MSSB in FINRA arbitration pursuant to his Employment Agreement;

**2.** Couch's counterclaims are DISMISSED WITHOUT LEAVE TO AMEND; and

**3.** MSSB's motions for Rule 16(f) sanctions against Couch, to reinstate the Court's motion to dismiss order, and to strike Couch's answer are DENIED AS MOOT.

IT IS SO ORDERED.

Dated:   **December 14, 2016**          /s/ Lawrence J. O'Neill
                                        UNITED STATES CHIEF DISTRICT JUDGE